U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

MAR 14 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

VALLEY ELECTRIC MEMBERSHIP
CORPORATION, INC.

versus                                             CIVIL ACTION NO. 06-2226
                                                       JUDGE TOM STAGG

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 194

## MEMORANDUM RULING

Before the court are cross motions for summary judgment filed by the parties in the above-captioned suit. Following a scheduling conference conducted by Magistrate Judge Mark L. Hornsby, the parties were instructed to file cross-motions for summary judgment in an attempt to resolve the issues before the court. Plaintiff and defendant in counterclaim, Valley Electric Membership Corporation, Inc. ("Valley Electric") filed its motion for summary judgment (see Record Document 12), as did defendant and plaintiff in counterclaim, International Brotherhood of Electrical Workers, Local 194 ("the Union") (see Record Document 11). For the reasons stated below, Valley Electric's motion is **GRANTED** and the Union's motion is **DENIED**.

## I. BACKGROUND

Valley Electric is an electric power cooperative owned by its members. It distributes energy throughout eight parishes in northern Louisiana, receiving electric power from power suppliers and routing that power to its twenty-seven substations. A substation is typically staffed with a substation superintendent and an engineering technician.

The Union is the exclusive bargaining agent for the purpose of collective bargaining with respect to wages, hours, and various other conditions of employment of the employees of Valley Electric. A collective bargaining agreement ("CBA") dated April 19, 2004, was in effect at all material times between Valley Electric and the Union.

This lawsuit is the direct result of a grievance which arose when, in March of 2006, Valley Electric awarded the position of engineering technician to Gene Knueppel ("Knueppel"). For a complete background of the dispute, however, the court must go back to March of 2005. At that point in time, Valley Electric placed Knueppel in a position at the substation. Union agents protested this placement, arguing that the job appeared to be an engineering technician position and, thus, Valley Electric was filling the job without subjecting the selection process to the CBA provisions on the subject. According to the Union, Valley Electric's General Manager explained to the Union that

this action was taken because the then-current engineering technician, Chris Goings ("Goings") did not want a promotion to station superintendent and the station superintendent at the time intended to retire. Thus, Valley Electric wanted to train Knueppel for the upcoming superintendent position (which was not covered by the CBA). The union did not file a grievance protesting Knueppel's placement at that time.

In January of 2006, the station superintendent retired, but Goings was promoted to the position, contrary to what the Union had been told. Thereafter, on February 20, 2006, Valley Electric posted the position of engineering technician, the position vacated by Goings. Knueppel applied for the position, as did seven other applicants. All but one of the applicants was more senior than Knueppel. On March 16, 2006, Knueppel was awarded the job of engineering technician. The employee with the most seniority--Reggie McGaskey--scored the lowest overall.

The Union filed a grievance protesting the award of the job to Knueppel. By letter dated March 22, 2006, Valley Electric denied the grievance. On April 19, 2006, the Union requested arbitration of the grievance. An arbitrator, Maretta Comfort Toedt, was mutually selected by the parties. At the arbitration hearing, Valley Electric and the Union stipulated that the issues for the arbitrator to decide were:

> Did the Company violate the CBA when it awarded the position of engineering technician (ET) to Gene Knueppel? If so, what is the appropriate remedy?

3

Record Document 11, Ex. 4 at 2.

After an evidentiary hearing was held, the arbitrator sustained the Union's grievance, concluding that Valley Electric "did violate the CBA when it awarded the position of engineering technician to Gene Knueppel." Record Document 11, Ex. 4 at 16.

## II. LAW AND ANALYSIS

### A. Standard Of Review.

The law regarding judicial review of labor disputes is clear and has been vetted by numerous other courts. "So long as the arbitrator's decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside." Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Assn', 889 F.2d 599, 602 (5th Cir. 1989) (quotations omitted). Recognizing this deferential standard of review, federal courts are free, however, to scrutinize an award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement. See id.; see also United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S. Ct. 364 (1987) (holding that judicial deference ends where an arbitrator exceeds the express limitations of the contractual mandate). When an arbitrator exceeds her authority, vacation of the judgment is appropriate. See United States Postal Serv. v.

Am. Postal Workers Union, 922 F.2d 256, 258 (5th Cir. 1991) (holding that an arbitrator's decision on the merits will not be enforced if the arbitrator exceeded his authority under a collective bargaining agreement).

**B.     The Agreement.**

The relevant portions of the CBA include Article 3, section 3.1, entitled "Management Rights":

> The Company retains all rights of management which it had prior to the selection of a collective bargaining agent by the employees except as such rights are specifically relinquished, limited, or modified by express provisions of this Agreement.
>
> Such rights include, but are not limited to, the right to:
>
> a)   Plan, direct and control the work.
>
> * * *
>
> e)   Determine job content.
>
> * * *
>
> j)   Determine the qualifications, competency, skills, ability and fitness of employees.

Record Document 11, Ex. 1 at 4.

Article 5 of the CBA addresses grievance and arbitration procedure. Section 5.4 of that article, entitled "Arbitrator's Authority," provides:

5

> (a) The sole function of the arbitrator shall be to interpret the provisions of this Agreement and apply them to the facts of the grievance, and if he determines that the Agreement was breached he may award an appropriate remedy. The arbitrator shall have no power to modify, supplement or otherwise alter this Agreement.
>
> * * *
>
> (c) <u>The arbitrator shall have authority to overturn any factual determination by the Company only upon an expressed finding by the arbitrator that the Company's factual determination was clearly erroneous.</u>

<u>Id.</u>, Ex. 1 at 8 (emphasis added).

Seniority is addressed in Article 7 of the CBA. Specifically, section 7.3, entitled "Posting of Vacancies," provides:

> a) All non-entry level job openings within the bargaining unit shall be posted for seven (7) calendar days so that employees may indicate by signing the bid sheet their desire for the vacancy. Such notice shall contain the job classification, the department and the number of available openings and the qualifications and responsibilities for the job.
>
> b) In the filling of any jobs, vacancies, and making promotions (the word "promotion" shall mean advancement to a higher job classification), seniority (as defined in Article 7) shall be given consideration, and where ability, skill and qualifications are reasonably equal, seniority shall control. Final determination <u>of such qualifications</u> shall be made by the Company, except that any dispute which may arise in connection with any such matter shall be handled in accordance with the provisions

of Article 5 (Grievance and Arbitration) of this agreement.

Id., Ex. 1 at 10 (emphasis in original).

The final relevant portion of the CBA is found at section 14.3, entitled "Performing Work in a Different Classification," which provides:

> a) TEMPORARILY RELIEVING IN HIGHER CLASSIFICATION: Any employee covered by this agreement who is designated to temporarily relieve or substitute in a higher classification for a period of eight (8) or more consecutive hours shall be paid an additional $1.00 (one dollar) per hour for each hour worked.

Id., Ex. 1 at 20. This is also commonly referred to as set up pay.

**D. Analysis.**

The issue before this court is whether the arbitrator exceeded her authority under the CBA when she sustained the grievance. The Union essentially contends that the duty of good faith and fair dealing is an implied term in every CBA and that the arbitrator is therefore authorized to base her award on a breach of that duty. Relying upon that duty, the Union argues that Valley Electric acted in bad faith when it "set up" Knueppel in the engineering technician position in 2005. Valley Electric, however, asserts that even in light of the undisputed duty of good faith and fair dealing, the arbitrator did not find that it breached that duty. Furthermore, Valley Electric contends the arbitrator clearly exceeded her authority to impose an

7

award that she deemed "fair."

The "rule in this circuit . . . is that arbitral action contrary to express contractual provisions will not be respected." Delta Queen Steamboat Co., 889 F.2d at 604. In her decision and award, the arbitrator stated, in pertinent part:

> [B]ased on the evidence before me, the set up of Knueppel pursuant to Section 14.3(a) was discriminatory in that it gave Knueppel, who was the second most junior of the applicants for the ET position, an unfair advantage in the selection process for the ET vacancy. But for his placement in this slot, he would not have gained the extensive knowledge of the ET position that he did, which in turn enabled him to outperform all the other applicants. While the Company has extremely wide berth under Section 7.3 to determine the qualifications of applicants, that determination is not without limits. While I did not find that the Company's factual determination in the selection process was clearly erroneous, as required by Section 5.4(c), I did find that the precursor to the selection process, namely the temporary assignment of Knueppel to the substation, was discriminatory and therefore in breach of the covenant of good faith and fair dealing.
>
> For all of the above reasons and in light of the circumstances presented by the evidence, I find that the Company did violate the CBA when it awarded the position of engineering technician to Gene Knueppel.

Record Document 11, Ex. 4 at 15-16.

An arbitrator's award must "draw its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S. Ct. 1358 (1960). In applying the "essence" test, the Fifth Circuit has

8

declared that an arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1325 (5th Cir. 1994) (citations omitted). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Wheel, 363 U.S. at 597, 80 S. Ct. at 1361. See also Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66, 71 F.3d 179 (5th Cir. 1995).

The arbitrator specifically recognized that "[b]ased on a review of the overall selection process, it appears to me that the parties involved in the process [] made a considerable effort to ensure that the process was job-related, objective, and not simply a ruse to ensure that Knueppel ultimately got the position." Record Document 11, Ex. 4 at 13. Having noted this fact, the arbitrator proceeded to conclude that "the playing field was not level before they even began." Id. She then discussed the covenant of good faith and fair dealing, noting that while an implied covenant can serve as a basis for a claim of breach of a CBA, the claim must be coupled with a specific allegation of a violation of the CBA. See id., Ex. 4 at 13-14. Arbitrator Toedt referred to Section 14.3(a) regarding set up pay and noted that Knueppel was paid set up pay to "either add to the [engineering

9

technician] complement or to train him for [the superintendent's] job, or perhaps both," adding that "[t]he evidence is conflicting at best." Id., Ex. 4 at 14. Later in her opinion, the arbitrator again noted that the testimony was "conflicting at best" and that it was "possible that the placement of Knueppel in the substation department may have started out as training him to replace Rachel [the retiring superintendent], but that situation obviously changed when Goings took that position." Id., Ex. 4 at 15. She then concluded, without any reference to the CBA whatsoever, that Knueppel's "placement for such a lengthy period ended up giving him an unfair advantage over other senior employees." Id. She continued to find that the "set up of Knueppel pursuant to Section 14.3(a) was discriminatory in that it gave Knueppel, who was the second most junior of the applicants for the [engineering technician] position, an unfair advantage in the selection process for the [] vacancy." Id.

After reviewing both the collective bargaining agreement and the findings of the arbitrator, this court concludes that the arbitrator's decision did not draw its essence from the CBA. In United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987), the Supreme Court observed, "[A]s long as the arbitrator is . . . acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."

The clear and precise language of the CBA reveals that the arbitrator was not acting within the scope of her authority by ignoring the specifically reserved rights of management to train its employees and to determine the qualifications of applicants found in the CBA. Despite the restricted standard of review that this court must employ of the arbitrator's decision, this court cannot overlook the flagrant violation by the arbitrator of her authority by ignoring the precise language of the CBA and substituting her notion of fairness for the language of the CBA.

The Fifth Circuit's opinion in <u>Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.</u>, 918 F.2d 1215 (5th Cir. 1990), explains that the court should "look[] only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract." <u>Id.</u> at 1219 n. 3 (citations omitted). It is abundantly clear that this award cannot be rationally inferable from the unambiguously written CBA that provides management the authority to make final determination of such qualifications in filling any job. Furthermore, the CBA plainly provides that an arbitrator may only overturn a factual determination upon an expressed finding that it was clearly erroneous. Reiteration of the Supreme Court's statement in <u>Enterprise Wheel</u> is merited: an arbitrator is "confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." <u>Enterprise Wheel</u>, 363 U.S. at

597, 80 S. Ct. at 1361. The arbitrator's reliance upon good faith and fair dealing to impose an award that she felt was fair is clearly outside of the language of the CBA. Although the arbitrator appeared to attempt to remedy what she perceived as an "unfair" situation, the issues before her and the express language of the CBA do not support her decision to turn what she believed to be an unfair situation into a fair one. If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning. See Delta Queen, 889 F.2d at 602. Valley Electric has the undeniable right to make determinations regarding qualifications. This factual determination may be overturned by the arbitrator only upon an expressed finding that the determination was clearly erroneous. Arbitrator Toedt clearly stated in her award that she "did not find that the Company's factual determination in the selection process was clearly erroneous, as required by Section 5.4(c). . . ."[1] Record Document 11, Ex. 4 at 15. The arbitrator exceeded her authority in determining that the CBA had been violated. Her award cannot be upheld.

---

[1] To be complete, Arbitrator Toedt concluded by stating that she "did find that the precursor to the selection process, namely the temporary assignment of Knueppel to the substation, was discriminatory and therefore in breach of the covenant of good faith and fair dealing." Id., Ex. 4 at 15-16. This conclusion, however, only serves to illustrate the arbitrator's overreaching attempt to fashion a "fair" award and her own brand of "industrial justice."

## III. CONCLUSION

Based on the foregoing analysis, Valley Electric's motion for summary judgment (Record Document 12) is **GRANTED** and the Union's motion for summary judgment (Record Document 11) is **DENIED**. All claims by the Union against Valley Electric are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 14th day of March, 2008.

_____
JUDGE TOM STAGG